# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DELOREAN LUCAS,                           Case No. 1:12-cv-138
     Petitioner,

                                     Dlott, J.
     vs.                                  Bowman, M.J.

HAMILTON COUNTY                           **REPORT AND**
MUNICIPAL COURT,                          **RECOMMENDATION**
     Respondent.

Petitioner has filed a pretrial petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 with the assistance of counsel, requesting "release . . . from all custody and control by the Hamilton County Municipal Court for any and all claims relating to the [pending] complaint in Hamilton County Case No. 11CRB27911." (Doc. 1). Petitioner has informed the Court that the Hamilton County Municipal Court has stayed the state criminal matter, which was originally scheduled for trial on February 28, 2012, "pending resolution of the petition in the District Court." (Doc. 8, Ex. 1). This matter is now before the Court on expedited review of the petition, respondent's return of writ and supplemental return of writ filed in accordance with this Court's order of March 13, 2012, as well as petitioner's responses to respondent's pleadings. (Docs. 1, 7, 10, 13, 14).

## I. PROCEDURAL HISTORY

### First Trial Proceeding: Hamilton County Municipal Court Case No. 11TRD27071

On May 24, 2011, petitioner received a traffic violation ticket from the City of Cincinnati, Ohio. Petitioner was cited for disregarding a stop sign, which is a violation of Cincinnati Municipal Code § 506.35, and ordered to appear at the Hamilton County Municipal

Court.  The matter was assigned a case number:  No. 11TRD27071.

On September 2, 2011, petitioner, who maintained his innocence, appeared before the Hamilton County Municipal Court for trial.  (*See* Doc. 1, September 2, 2011 Tr. 3).  At the trial, the city prosecutor called only one witness, the Cincinnati police officer who had ticketed petitioner, to present evidence demonstrating petitioner's guilt.  The officer, Kenneth Grubbs, stated that he issued the traffic citation when he observed petitioner, who was driving westbound on Dorchester Avenue, "slow down" to make a right turn onto Auburn Avenue, but fail to "come to full, complete stop" at the stop sign located where Dorchester Avenue and Auburn Avenue cross at a "tricky" six-way intersection.  (*Id.*, Tr. 6-8).  Grubbs also testified that when he asked petitioner if he knew why he was being ticketed, petitioner responded by stating that "his passenger just told him that he ran a stop sign."  (*Id.*, Tr. 8).

Petitioner's sole defense in response to the prosecution's case was that there was another sign located beneath the Dorchester Avenue stop sign, which indicated that he "could make a right" and did not "have to stop at the stop sign as long as [he was] making a right."  (*See id.*, Tr. 13).  First, petitioner asked Grubbs on cross-examination whether he had noticed the other sign, to which Grubbs responded: "No, sir."  (*Id.*, Tr. 10).  Next, after the prosecution concluded the presentation of its case, petitioner presented a cell-phone photograph and video that he claimed to have taken of the area and took the stand to relay his version of events.  (*See id.*, Tr. 12-15).

At one point in petitioner's testimony, the judge asked to see the picture that petitioner had taken of the sign.  (*Id.*, Tr. 14).  The following colloquy between the judge and petitioner ensued:

THE COURT:  The sign says – I can see a sign, says something about a right turn. What does it say?

THE DEFENDANT:  Says stop, then below that says right turn.

2

****

THE COURT:  This is a picture of the street sign that says Auburn.  And where is that street sign located?

THE DEFENDANT:  In Auburn by Christ Hospital.

THE COURT:  Now, where is it located in relation to the intersection?

THE DEFENDANT:  Across the street.

****

THE COURT:  Is that the same stop sign that the officer testified about?

THE DEFENDANT:  Yes.

(*Id.*, Tr. 14-15).

The prosecutor did not cross-examine petitioner, but recalled the police officer to testify on redirect examination.  (*Id.*, Tr. 16).  Grubbs reiterated that he could not recall there being a sign "for the lane of traffic on Dorchester."  (*Id.*).  Grubbs also stated on recross-examination that it would not be "right" to have such a sign; he explained that allowing a "lane of traffic that has no traffic control device" at that particular intersection, with traffic coming up the hill in the same direction from downtown, could "[v]ery easily . . . caus[e] an accident."  (*Id.*, Tr. 17).

No further evidence was presented.  In closing, the city prosecutor stated:

Well, this is a minor misdemeanor.  Clearly the best way to find out if there is that sign under the stop sign would be a view of the scene.  But that's not necessarily practical on this case.

(*Id.*, Tr. 18).  The prosecutor instead contended that petitioner's theory of defense should not be given any credence based on Officer Grubbs' testimony that he had no memory of "that sign being there."  (*Id.*, Tr. 18).  The prosecutor also argued that petitioner's "photographs do not clearly reflect that intersection . . . has a stop sign with a sign" and that "it does not make sense"

3

to allow a right turn from Dorchester Avenue onto Auburn Avenue "without having to stop" when vehicles "coming up Sycamore Hill have no traffic control device to stop." (*Id.*, Tr. 18-19).  In closing, petitioner stated only:  "I agree that I read that sign and I followed the rules.  I don't think I should be found guilty because I followed the law.  That's it." (*Id.*, Tr. 19).

After hearing the evidence and the parties' arguments, the court acquitted petitioner of the charged traffic offense of disregarding a stop sign.  The court stated on the record:  "The Court has a reasonable doubt here, so for that reason the Court will find the defendant not guilty of the charge." (*Id.*).

**Second Trial Proceeding: Hamilton County Municipal Court Case No. 11CRB27911**

On September 8, 2011, nearly a week after petitioner's acquittal in Case No. 11TRD27071, Officer Grubbs filed a complaint with the Hamilton County Municipal Court accusing petitioner of falsification in violation of Ohio Rev. Code § 2921.13.  (*See* Doc. 7, attached exhibit).  In the supporting affidavit, Grubbs stated:

> Delorean Lucas did in an official proceeding and under oath before a court administrator . . . make false statements during a trial for a stop sign violation. Specifically, Mr. Lucas made statements as to a sign that read "except[] right turn" as well as showed pictures from his cell phone which he used to affirm his statement.

(*Id.*).  It appears from the record that the information about the sign was relayed to Grubbs by the presiding judge in Case No. 11TRD27071, who apparently "actually checked" after the trial ended in that case to see if there really was another sign at the scene as petitioner had claimed. (*See* Doc. 13, January 5, 2012 Tr. 16).  The falsification complaint was assigned the case number No. 11CRB27911.

With the assistance of counsel from the Ohio Justice & Policy Center, petitioner filed a motion to dismiss the falsification complaint.  (*See* Doc. 7, attached exhibit).  In the motion, petitioner contended that the new charge violated his rights under the Fifth Amendment's

Double Jeopardy Clause, because it involved relitigation of an issue previously decided in his favor in Case No. 11TRD27071.  (*See id.*).  A hearing on the motion was held on January 5, 2012, before a judge presiding at the Hamilton County Court of Common Pleas.  (*See* Doc. 13, January 5, 2012 Tr.; *see also* Doc. 1, ¶4.58).  After hearing counsels' arguments, the court overruled the motion to dismiss on the record.  (Doc. 13, January 5, 2012 Tr. 17-18).  In ruling on the motion, the court did not address the double jeopardy concerns asserted by petitioner's counsel at the hearing.  Instead, the court expressed agreement with the prosecutor's general argument that "[i]t would be of no service to the administration of justice to enlarge the perception of double jeopardy to allow . . . a defendant immunity for perjury while testifying in his own defense;" specifically, the court stated only the following as the reason for its decision:

> I would have to side with the City on this one.  Based on the information before the Court at this time, if, in fact, Mr. Lucas misrepresented the existence of that sign in court, we would be just opening the floodgates.  Even though it's very common for people to lie in court, that doesn't change the fact that it's not to be accepted or condoned.

(*Id.*, Tr. 16-17).

### Federal Habeas Corpus

Petitioner, who is represented by new counsel, filed the instant petition for federal habeas corpus relief on February 15, 2012.  (*See* Doc. 1).  In the petition, he asserts as the sole ground for relief that his "continued custody" based on the "obligation to appear for trial" in Case No. 11CRB27911 is barred by the Double Jeopardy Clause.  (*Id.*, ¶¶5.1-5.10).

In the return of writ filed in response to the petition, respondent contends that the petition should be dismissed on exhaustion grounds because petitioner has not pursued the remedy of a petition for writ of mandamus in the state courts.  (Doc. 7, Brief, pp. 1-2).  Respondent also alternatively argues that petitioner is not entitled to habeas relief because his double jeopardy claim lacks merit.  (*Id.*, pp. 2-3; Doc. 13).  Petitioner has filed a "traverse" in reply to the return

5

of writ, in which he contends that he has exhausted all available state remedies and is entitled to relief based on the merits of the constitutional claim.  (Doc. 10).

On March 13, 2012, the undersigned issued an order requiring respondent to file a supplemental return of writ to, among other things, address the Court's "concerns as to whether petitioner satisfies the 'in custody' requirement for habeas corpus jurisdiction based on the charge pending before the municipal court."  (Doc. 11).  In the supplemental return of writ filed in response to that order, respondent did not address the "in custody" issue, but pointed out that the Court has jurisdiction to consider a double jeopardy claim raised in a pretrial petition.  (Doc. 13, p. 1 & n.1).  Petitioner, on the other hand, has addressed the "in custody" jurisdictional issue in his response to the supplemental return of writ.  He contends that his duty "to appear for trial under threat of arrest and criminal sanction" satisfies the custody requirement of 28 U.S.C. § 2241.  (Doc. 14).

## II.  OPINION

### A.  It Appears At This Juncture That Jurisdictional And Exhaustion Requirements Have Been Met For Federal Habeas Review Of Petitioner's Pretrial Double Jeopardy Claim

As respondent has pointed out in the supplemental return of writ (*see* Doc. 13, p. 1), the Court has jurisdiction under 28 U.S.C. § 2241 to consider a habeas petition filed by a state criminal defendant prior to his state trial in order "to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the [Double Jeopardy] Clause."  *See Harpster v. Ohio*, 128 F.3d 322, 325 (6th Cir. 1997) (quoting *Abney v. United States,* 431 U.S. 651, 662 (1977) (emphasis in original)).  In order to "protect the state courts' opportunity to initially resolve constitutional issues arising within their jurisdictions and to limit federal judicial interference in the state adjudicatory processes," the petitioner must exhaust available state court remedies before pursuing federal habeas corpus relief.  *Atkins v. Michigan,* 644 F.2d 543, 546 (6th Cir.

6

1981); *see also Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 489 (1973);

*Pruitt v. Ohio*, No. 1:10cv313, 2010 WL 2607246, at *2 (S.D. Ohio May 19, 2010) (Hogan,

M.J.) (Report & Recommendation), *adopted*, 2010 WL 2620804 (S.D. Ohio June 25, 2010)

(Barrett, J.).  Federal adjudication of double jeopardy claims raised in pretrial habeas petitions is

"appropriate when those claims have been raised and rejected in the state trial court and under

state law there is no right to interlocutory appeal."  *Harpster,* 128 F.3d at 325-26 (citing *Gully v.*

*Kunzman*, 592 F.2d 283, 287 (6th Cir. 1979)).

        Respondent has conceded in the return of writ that there is no right to an interlocutory

appeal in Ohio from a trial court's denial of a pretrial double jeopardy claim.  (*See* Doc. 7, p. 1).

*See also Harpster*, 128 F.3d at 326 (citing *State v. Crago,* 559 N.E.2d 1353 (1990)).  Respondent

contends, however, that the exhaustion requirement has not been met because petitioner can

pursue the remedy of mandamus, which is available to "complainants who lack an adequate

remedy in the ordinary course of law."  (Doc. 7, p. 1).  The undersigned disagrees with

respondent's contention that mandamus is an available remedy in Ohio for obtaining pretrial

appellate review of a double jeopardy claim.  In *Wenzel v. Enright,* 623 N.E.2d 69, 71-72 (Ohio

1993), the Ohio Supreme Court made it clear that "none of the extraordinary writs . . . provide an

appropriate method for challenging the denial of a motion to dismiss on the ground of double

jeopardy" in Ohio.  The court ruled in pertinent part as follows:

> . . . .In our judgment, none of the five extraordinary writs, including habeas
> corpus, constitutes a proper avenue for an accused to test a trial court's ruling on
> the issue of double jeopardy.  We reach this conclusion for two reasons.  First,
> there exists an adequate remedy in the ordinary course of law to challenge an
> adverse ruling on the issue, to wit:  an appeal to the court of appeals at the
> conclusion of the trial court proceedings.  Second, none of the five extraordinary
> writs seem applicable to avoid trial based upon claims of double jeopardy.
>
> To avoid any further confusion on this issue, we now hold that the decision of a
> trial court denying a motion to dismiss on the ground of double jeopardy is not a
> final appealable order, and is not subject to judicial review through an action in

habeas corpus or prohibition, or any other action or proceedings invoking the original jurisdiction of an appellate court.  We further hold that, in Ohio, the proper remedy for seeking judicial review of the denial of a motion to dismiss on the ground of double jeopardy is a direct appeal to the court of appeals at the conclusion of the trial court proceedings.

*Id.* at 72.

Here, as in *Harpster*, petitioner has satisfied the exhaustion requirement by raising the double jeopardy claim in a pretrial motion to dismiss, which was considered and rejected by the trial court.  *See Harpster*, 128 F.3d at 326.  Because there is no right to an interlocutory appeal in Ohio, and no other avenue of review is available in Ohio to obtain pretrial appellate review of the trial court's ruling, exhaustion does not pose a hurdle to federal habeas review of petitioner's pretrial petition.  *Cf. id.*

The undersigned has also expressed concern that the "in custody" requirement for federal habeas jurisdiction under 28 U.S.C. § 2241 may not have been met given the relatively minor nature of the charge lodged against him and that he is not under any custody restrictions at the present time other than the duty to appear in court to answer the charge.  (*See* Doc. 11).  Upon review of the cases cited by petitioner in support of jurisdiction, the undersigned is persuaded that because petitioner "is under an obligation to appear for trial" on a first-degree misdemeanor charge of falsification, which carries a possible penalty of up to 180 days in jail, the custody requirement is satisfied in this case.  *See* Ohio Rev. Code § 2921.13(A)(1), (F)(1) and § 2929.24(A)(1); *see also Saylor v. Cornelius,* 845 F.2d 1401, 1403 n.2 (6th Cir. 1988) (quoting *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 301 (1984), in finding that the petitioner was "in custody" for federal habeas corpus purposes because he was "under an obligation to appear for trial" on a second indictment after his first conviction was overturned); *Kang v. Green*, No. 2:04cv801, 2006 WL 689090, at *6-8 (S.D. Ohio Mar. 14, 2006) (relying on *Lydon* and *Hensley v. Municipal Court,* 411 U.S. 345, 351(1973), in holding that "being required

to appear for trial, under threat of arrest, constitutes a restraint of liberty sufficient to be deemed custody for purposes of federal habeas corpus").

Accordingly, in sum, the undersigned concludes that federal adjudication of petitioner's double jeopardy claim is appropriate at this juncture because petitioner has exhausted the only state court remedy that is available to him prior to his trial on the falsification charge and has satisfied the jurisdictional requirements for federal habeas corpus review under 28 U.S.C. § 2241.

**B.  An Unconditional Writ Of Habeas Corpus Should Issue Because Prosecution Of The Pending State Falsification Charge, Involving Relitigation Of An Issue Previously Decided In Petitioner's Favor, Is Barred By The Fifth Amendment's Double Jeopardy Clause**

In this federal habeas case, the applicable standard of review governing the adjudication of petitioner's double jeopardy claim, which was considered and rejected by the Hamilton County Municipal Court, is set forth in 28 U.S.C. § 2254(d).  Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state court unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)), *cert. denied*, 132 S.Ct. 1743 (2012).  "A state court's

adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit recently explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable.* . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court has clarified that in assessing the merits of a constitutional claim

10

under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte*, 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 132 U.S. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'*" *Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

In this case, it appears from the record presented by the parties that the trial court only issued an oral ruling from the bench at the hearing held in January 2012 on petitioner's motion to dismiss the falsification complaint. In denying petitioner's motion, the court did not cite or refer

to any caselaw pertaining to the resolution of double jeopardy claims, nor did the court address the double jeopardy arguments asserted by petitioner's counsel in support of the motion to dismiss.  (*See* Doc. 13, January 5, 2012 Tr. 16-17).  Instead, the court's decision to overrule the motion appears to have been based solely on concerns that the dismissal of the falsification charge would amount to an acceptance or condoning of perjury in court proceedings and would "just be opening the floodgates" to defendants to lie and misrepresent the evidence in order to obtain acquittals on criminal charges.  (*See id.*).  The state court's adjudication of the matter was contrary to clearly-established Supreme Court precedents to the extent that the court did not apply or even consider the applicable standards adopted by the Supreme Court for assessing the merits of analogous double jeopardy claims.  In any event, the undersigned concludes that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *See Harrington,* 131 S.Ct. at 786-87.

It is well-settled that the Fifth Amendment's Double Jeopardy Clause, made applicable to the states through the Fourteenth Amendment, *see Benton v. Maryland,* 395 U.S. 784, 794 (1969), "protects against a second prosecution for the same offense after acquittal."  *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)).  The Supreme Court has also clearly established that the doctrine of collateral estoppel is included in the constitutional prohibition against double jeopardy.  *See Ashe v. Swenson*, 397 U.S. 436, 442-46 (1970); *see also Dowling v. United States*, 493 U.S. 342, 347-48 (1990) (recognizing "the collateral-estoppel component of the Double Jeopardy Clause"); *Harris v. Washington,* 404 U.S. 55, 56 (1971) (per curiam) ("collateral estoppel in criminal trials is an integral part of the protection against double jeopardy guaranteed by the Fifth and Fourteenth Amendments"); *cf. Smith v. Dinwiddie*, 510 F.3d 1180, 1186-87 (10th Cir. 2007) (holding under

12

the "clearly established" standards adopted by the Supreme Court in *Ashe* that "state courts are

constitutionally required to apply principles of collateral estoppel in criminal cases . . . if the

protections of the Double Jeopardy Clause have been triggered" by a prior proceeding).

In *Ashe,* the Court explained that collateral estoppel, which "means simply that when an

issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot

again be litigated between the same parties in any future lawsuit," constitutes an "extremely

important principle in our adversary system of justice." *Ashe,* 397 U.S. at 443.  The Court

pointed out that because collateral estoppel had long been an established rule of federal criminal

law, it was "much too late to suggest that th[e] principle is not fully applicable to a former

judgment in a criminal case, either because of lack of 'mutuality' or because the judgment may

reflect only a belief that the Government had not met the higher burden of proof exacted in such

cases for the Government's evidence as a whole although not necessarily as to every link in the

chain." *Id.* (internal citation and quotation omitted).  The *Ashe* Court held that "[w]here a

previous judgment of acquittal was based upon a general verdict, as is usually the case," the

court is required to "examine the record of [the] prior proceeding, taking into account the

pleadings, evidence, charge and other relevant matter and conclude whether a rational jury could

have grounded its verdict upon an issue other than that which the defendant seeks to foreclose

from consideration."  *Id.* at 444 (internal citation and quotation omitted).  The Court continued:

> The inquiry "must be set in a practical frame and viewed with an eye to all the
> circumstances of the proceeding."  *Sealfon v. United States*, 332 U.S. 575, 579, 68
> S.Ct. 237, 240 [(1948)].  Any test more technically restrictive would, of course,
> simply amount to a rejection of the rule of collateral estoppel in criminal
> proceedings, at least in every case where the first judgment was based upon a
> general verdict of acquittal.

*Id.*

In Supreme Court cases decided after *Ashe*, it was determined that the criminal defendant

13

who brings a double jeopardy claim based on collateral estoppel principles bears the burden of demonstrating "that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling,* 493 U.S. at 350-51.  If shown that the issue being litigated was decided in the first proceeding, "the constitutional guarantee applies, irrespective of whether the [fact-finder] considered all relevant evidence, and irrespective of the good faith of the State in bringing successive prosecutions." *Harris*, 404 U.S. at 56-57 (holding that a second trial was prohibited under the Double Jeopary Clause given the State's concession that "the ultimate issue . . . was decided by the jury in the first trial").

Neither in *Ashe* nor in the cases following *Ashe* did the Supreme Court ever suggest that an exception to the general rule prohibiting the relitigation of previously-decided issues has been made for cases where the government seeks to prosecute a defendant for perjury based on his testimony in his own defense at a prior criminal trial that resulted in a verdict of acquittal.  *Cf. United States v. Castillo-Basa,* 483 F.3d 890, 902 (9th Cir. 2007) (rejecting the government's attempts in an analogous case "to carve out of the Double Jeopardy Clause an exception that we have never recognized and never should").  Indeed, in a case that preceded *Ashe*, the Supreme Court opined that in contrast to cases involving a conviction at a former trial, which does not trigger double jeopardy concerns and is not available as a defense against a later prosecution for the separate offense of perjury, an *acquittal* could operate "to conclude those matters in issue which the verdict determined though the offenses be different."  *See United States v. Williams*, 341 U.S. 58, 62-63, 64 n.3 (1951) (quoting *Sealfon*, 332 U.S. at 578).  The Court pointed out that in the context of a conviction for a substantive offense, double jeopardy does not attach to prevent a later prosecution for the separate offense of perjury committed at the former trial, nor do collateral estoppel principles apply because "the facts in the former trial, if applicable to the

14

subsequent one, were found against him." *Id.* at 62, 64 n.3.  In contrast, in the context of an acquittal, although double jeopardy concerns are not implicated to the extent that the two prosecutions pertain to separate offenses, double-jeopardy collateral estoppel principles may apply to bar the later prosecution for perjury to the extent the verdict of acquittal may constitute a  "determination favorable to petitioner of the facts essential to conviction" on the subsequent charge.  *See id.* at 63-64 & n.3 (discussing *Sealfon* and cases cited in support of "the rule that an acquittal on facts essential to conviction on the subsequent charge bars a later prosecution").

The lower courts that have addressed the issue at hand have uniformly concluded that *Ashe* and its progeny are applicable to claims challenging prosecutions for perjury stemming from false testimony given by a defendant in a former trial that resulted in an acquittal.  *See, e.g., Castillo-Basa,* 483 F.3d at 896-06 (and cases cited therein); *United States v. Ruhbayan*, 325 F.3d 197, 201-02 (4th Cir. 2003); *United States v. Haines,* 485 F.2d 564, 565 (7th Cir. 1973) (and cases cited therein); *United States v. Barnes,* 386 F. Supp. 162, 163-64 (E.D. Tenn. 1973), *aff'd mem.*, 506 F.2d 1400 (6th Cir. 1974); *cf. Wheatley v. United States*, 286 F.2d 519, 520-21 (10th Cir. 1961) (in a pre-*Ashe* case, the Tenth Circuit held that the subsequent perjury prosecution was barred under the Supreme Court's decisions in *Sealfon* and *Williams* because the "identical factual issue was present and critical in each prosecution").  In so ruling, courts have emphasized that an acquittal following a trial on criminal charges is not an automatic bar to a subsequent perjury prosecution and that "[t]o hold otherwise . . . would be to put . . . a premium on perjury and to make immunity from punishment for perjury rest on success in commission of the crime." *Ruhbayan*, 325 F.3d at 201-02 (quoting *United States v. Sarno,* 596 F.2d 404, 407 (9th Cir. 1979), in turn quoting *United States v. Fayer*, 573 F.2d 741, 745 (2d Cir. 1978)); *see also*

*Castillo-Basa,* 483 F.3d at 905-06;[1] *cf. United States v. Eddy,* 737 F.2d 564, 571-72 (6th Cir.

1984) (and cases cited therein).  The Fourth Circuit has explained the "legal tension" that arises

in this context as follows:

> On the one hand, there is some potential for abuse in the government's procedure
> of acquittal, questioning on matters related to the acquittal, and second
> prosecution for some form of perjury.  Accusing someone of a false denial does
> indeed assume the truth of the matter denied, and prosecutors frustrated at an
> acquittal should not lightly be able to take a second bite at the apple by bringing
> perjury charges afterwards. . . .

> On the other hand, a defendant does not win with acquittal a license to commit
> perjury.  *Cf. United States v. Dunnigan,* 507 U.S. 87, 96, 113 S.Ct. 1111, 122
> L.Ed. 445 (1993) ("[A] defendant's right to testify does not include a right to
> commit perjury."). . . .  Law enforcement is entitled to keep investigating a
> criminal enterprise even after one defendant is acquitted. . . .

*United States v. Benkahla,* 530 F.3d 300, 306-07 (4th Cir. 2008).

In light of this tension, the lower courts have followed *Ashe*'s instruction by engaging in

a close examination of the record of both proceedings to discern whether or not an issue was

resolved in the petitioner's favor at the first trial, which "the government would be required to

prove in order to obtain a perjury conviction at the second trial."  *See Castillo-Basa,* 483 F.3d at

897-99; *see also Benkahla,* 530 F.3d at 307; *Ruhbayan,* 325 F.3d at 201-02; *Barnes,* 386 F.

Supp. at 163-64; *cf. Haines,* 485 F.2d at 565 (and cases cited therein) ("[i]n the context of a

perjury indictment relating to testimony given at a former trial on a substantive charge,"

collateral estoppel applies to bar perjury prosecution only upon an affirmative showing that "the

_____

[1]Given that there is no *per se* bar against perjury prosecutions involving defendants who testify and are acquitted at trial, the circuit court in *Castillo-Basa,* 483 F.3d at 905 n.14, also noted, in contrast to the trial court in the instant case, that it had no concerns that application of the collateral estoppel doctrine in appropriate cases will "encourage or embolden criminal defendants to perjure themselves at trial when they otherwise would not have done so."  The court reasoned that most defendants are "concerned with the impact of their testimony only on the prosecution that immediately threatens their freedom, and not on potential future prosecutions should they be acquitted."  *Id.*  In addition, the court pointed out that collateral estoppel is a "highly uncertain safeguard against a potential perjury prosecution" because it is "difficult to predict before a trial is completed when [the doctrine] will bar relitigation of particular issues in that trial."  *Id.*

issues of fact central to the prosecution were *necessarily* determined in the former trial")
(emphasis in original).  Factors that the courts have considered in making this determination are
whether the ultimate issue to be decided in the perjury trial is "identical" to an issue that was
"actually" and "necessarily" adjudicated in the first trial; whether the resulting judgment settling
the issue was "final and valid;" and whether the parties "had a full and fair opportunity to litigate
the issue in the prior proceeding."  *See, e.g., Benkahla*, 530 F.3d 307 (and cases cited therein);
*Ruhbayan,* 325 F.3d at 202; *see also Smith,* 510 F.3d at 1188; *cf. Castillo-Basa*, 483 F.3d at 387
(where the court employed a three-step inquiry involving (1) identification of the issues in the
two actions to determine if they "are sufficiently similar and sufficiently material in both actions
to justify invoking the [collateral estoppel] doctrine;" (2) "an examination of the record of the
prior case to decide whether the issue was 'litigated' in the first case;" and (3) "an examination
of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the
first case").

Here, the record reflects that the trial court did not engage in any examination of the
record of the prior proceeding to determine whether or not double-jeopardy collateral estoppel
concerns were even implicated in this case.  The trial court's failure to follow or even consider
the Supreme Court's decisions in *Williams, Ashe* and *Harris* in adjudicating the matter, as other
lower courts have done in analogous cases, is contrary to clearly-established federal law as
determined by the United States Supreme Court.

Moreover, the trial court's decision, which focused on only one aspect of the tension
involved in the perjury context without addressing the countervailing double-jeopardy concern
that arises by allowing prosecutors a "second bite of the apple," *Benkahla*, 530 F.3d at 306,
constitutes an unreasonable application of *Williams*, *Ashe* and *Harris* and their progeny.  Upon

17

review of the record of the two state proceedings, it is clear that the ultimate issue to be decided in the perjury trial is identical to an issue that was actually and necessarily adjudicated in the traffic-violation proceeding.  As petitioner has argued, the sole issue in dispute at the prior trial was whether there was an additional sign located beneath the stop sign at Dorchester Avenue, which permitted petitioner to make a right turn onto Auburn Avenue without coming to a complete stop.  Petitioner testified that there was such a sign and presented a cell-phone photograph and video that he claimed to have taken of the sign as further evidentiary support for his position.  The trial court specifically asked to see the photograph of the additional sign, noted that it did say "something about a right turn," and asked petitioner questions to ascertain where it was located and what it meant.  (*See* Doc. 1, September 2, 2011 Tr. 14-15).  The prosecutor recalled the police officer who had issued the traffic citation in an attempt to rebut petitioner's testimony and devoted closing argument to refute petitioner's claim that he was permitted to make a right turn at the six-way intersection without coming to a stop.  (*See id.*, Tr. 16, 18-19).  The court's verdict of acquittal on the basis of "reasonable doubt," therefore, had to have been both actually and necessarily based on petitioner's testimony and supporting evidence that there was an additional sign at the scene, which permitted him to make a right turn without stopping at the stop sign.  Indeed, no rational fact-finder could have grounded the verdict of acquittal on any other issue.  *See Ashe*, 397 U.S. at 444.

The subsequent falsification complaint was lodged against petitioner when the trial judge who had acquitted petitioner for the traffic violation went to the scene and discovered that there was no additional sign that permitted a right turn off of Dorchester Avenue onto Auburn Avenue as petitioner had claimed.  The complaint, therefore, involves the same factual issue that was decided in petitioner's favor at the prior trial.  The trial court's ruling in petitioner's favor on the

18

basis of reasonable doubt constituted a "final and valid" judgment on the issue.  As the Ninth

Circuit has explained:

> All that is required to bar a second criminal trial on an issue that has been
> litigated and once decided is a determination that the government did not prevail
> on that issue the first time.  An acquittal based on a finding that the government
> failed to prove its case beyond a reasonable doubt is sufficient to bar retrial on
> any material issue that was litigated and necessarily decided in the first trial.  *See,
> e.g., Sarno*, 596 F.2d at 408.  "Decided" in a criminal case *always* means that the
> [fact-finder] had a reasonable doubt.  Were we now to conclude otherwise, it
> would not only fundamentally change our system of jurisprudence, but it would
> render every acquittal . . . meaningless for purposes of double jeopardy:  [the fact-
> finder] can *always* be said to have concluded only that the prosecution failed to
> prove its case beyond a reasonable doubt.

*Castillo-Basa*, 483 F.3d at 902 (emphasis in original).[2]

The question whether the city prosecutor was afforded a full and fair opportunity to

litigate the issue at the traffic-violation trial poses a closer issue.  The prosecutor apparently did

not visit or take photographs of the scene in preparation for the trial.  Moreover, as the

prosecutor stated in closing argument, because the case involved a "minor misdemeanor," it was

not "necessarily practical" to conclusively resolve the matter in dispute by way of a "view of the

scene."  (*See* Doc. 1, September 2, 2011 Tr. 18).

On the other hand, the evidence refuting petitioner's testimony and supporting evidence,

which the trial judge discovered after petitioner's acquittal by merely visiting the intersection of

Dorchester and Auburn Avenues, was in existence at the time of petitioner's first trial and was

---

[2]The instant case is distinguishable from *United States v. Richard*, 892 F.2d 761 (9th Cir. 1989) (per curiam), where the circuit court found that collateral estoppel principles did not apply to bar the defendant's prosecution for using a false document, which was challenged by the goverment in the first trial on the grounds of authenticity.  In *Richard*, the court concluded that although the two cases involved the same issue regarding the document's authenticity that was actually litigated in the first case, the issue was not necessarily decided in the prior trial because the jury may have acquitted the defendant for other reasons without finding that the document was authentic.  *See id.* at 763.  In contrast, in this case, the trial court's verdict of acquittal necessarily decided the issue of the additional sign, which was the only defense asserted by petitioner to contest his traffic citation for disregarding a stop sign.

easily obtainable and available to the prosecutor for the purpose of preparing and presenting the city's case against petitioner on the traffic citation.  Therefore, respondent cannot prevail on any argument that the city was denied "a full and fair opportunity" to litigate the contested matter because the additional evidence was "unavailable and undiscoverable prior to the earlier trial." *Ruhbayan*, 325 F.3d at 204 (holding in that case that the defendant's later prosecution for perjury was not barred because the "scheme to commit perjury was successfully concealed" until after the first trial ended, and "no amount of diligence" on the part of the government "would have uncovered [the] scheme to deceive the jury" in that trial).

The Supreme Court's decision in *Harris* provides some guidance in addressing this issue. In that case, the Supreme Court reversed a state supreme court decision holding that collateral estoppel did not apply to bar a subsequent prosecution because, although the ultimate issue involved in both cases had been decided in the petitioner's favor at the first trial, the court had excluded certain evidence of guilt in the first trial that "would clearly be admissible in the second trial."  *See Harris*, 404 U.S. at 55-57.  In reversing the state court decision, the Supreme Court stated that the second prosecution was barred by the collateral estoppel doctrine "irrespective of whether the jury considered all the relevant evidence" at the first trial.  *Id.* at 56.

In *Castillo-Basa*, the Ninth Circuit relied on *Harris* in rejecting the government's argument that a perjury prosecution should be permitted with respect to a previously-litigated issue because the government "lacked crucial evidence" of the defendant's "untruthfulness" in the form of a "'previously unavailable' tape recording" at the first trial.  *Castillo-Basa*, 483 F.3d at 903-04.  The court pointed out that although the tape recording was not delivered to and thus could not be located by the prosecuting attorney at the first trial, it had always been in the government's possession and thus "available" at the time of that trial.  *See id.* at 894, 904.  In

addition, the court reasoned that "there is no basis whatsoever for an exception providing that the proffer of evidence that was in existence in the time of the first trial, but was not presented by the government at that trial, nullifies the protections afforded by the Fifth Amendment." *Id.* at 903. Citing *Harris*, 404 U.S. at 56-57, the court stated:

> The Fifth Amendment, as interpreted in *Ashe v. Swenson*, bars relitigation of an issue already decided, no matter how much additional evidence the government may wish to introduce at a second proceeding. . . . The government has at its disposal a wide selection of tools at the appropriate time. That time is before or during the first prosecution, not afterwards in an effort to justify a second attempt to gain a conviction.

*Castillo-Basa*, 483 F.3d at 903. *Cf. Sarno*, 596 F.2d at 407 (stating that "unless the subsequent perjury indictment is based on evidence not available at the first trial," the collateral estoppel doctrine applies to bar the government's attempts to bring up issues that should have been raised at the first trial or to "recover from its initial failure to convince the trier of fact of the falsity of [the] defendant's testimony at the first trial").[3]

In this case, the city prosecutor recognized at the first trial that a "view of the scene" would resolve the issue as to whether or not there was an additional sign that allowed petitioner to turn right without coming to a complete stop at the Dorchester Avenue stop sign. Such evidence was both discoverable and easily available to the prosecutor in preparing for and presenting the city's case against petitioner for disregarding the stop sign. The prosecutor chose

---

[3]It is noted that in a later case, the Ninth Circuit disavowed the language in *Sarno* about the "rehashing of evidence" presented at the prior trial as "dicta." *See Richard*, 892 F.2d at 763; *see also Castillo-Basa*, 483 F.3d at 903 n.12. In *Richard*, the court stated that even assuming that the "government could not rehash evidence" used to challenge the veracity of a document at the first trial, "it was not required to continue the trial to marshal all possible evidence that the [defendant] was perjuring himself." *Richard*, 892 F.2d at 763. The court went on to hold that because much of the evidence used at the defendant's subsequent perjury trial "became available to the government only after his first trial, the government clearly did not simply 'rehash' the evidence used at the first trial." *Id.* In *Castillo-Basa,* 483 F.3d at 903 n.12, however, the Ninth Circuit further clarified that "*Sarno*, while affirming that a rehash of the evidence is prohibited by the Double Jeopardy Clause, did not determine that when the government does offer evidence that was unavailable at the first trial, its introduction is sufficient to circumvent the collateral estoppel doctrine. Nor could it have done so under the Double Jeopardy Clause."

as a "practical" matter not to utilize the "wide selection of tools" at her disposal to establish petitioner's guilt for such a minor offense.  The city, therefore, cannot now claim that it was denied a "full and fair opportunity" to litigate the issue based on a discretionary decision made by the prosecutor in the traffic violation case about the amount of time and degree of preparation to be accorded that matter.

Accordingly, in sum, the undersigned concludes that petitioner's prosecution on the pending falsification charge constitutes a violation of the Double Jeopardy Clause.  The trial court's denial of petitioner's motion to dismiss solely on the basis of concerns about condoning perjury and opening the "floodgates" to the commission of perjury in court proceedings is both contrary to and involves an unreasonable application of clearly-established federal law as determined by the Supreme Court in *Williams*, *Ashe* and *Harris* and their progeny.  To allow the prosecution to proceed to trial on the falsification complaint would subject petitioner to a "second prosecution for the same offense after acquittal" in violation of his double jeopardy rights.  *See Brown*, 432 U.S. at 165.  Therefore, petitioner is entitled to habeas corpus relief, and an unconditional writ of habeas corpus should issue releasing petitioner from trial or further custody on the falsification charge that is currently pending before the Hamilton County Municipal Court.

## IT IS THEREFORE RECOMMENDED THAT:

Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) be **GRANTED**, and that an unconditional writ of habeas corpus be issued that releases petitioner from trial or further custody on the pending first-degree misdemeanor falsification charge in

Hamilton County Municipal Court Case No. 11CRB27911.


 *s/Stephanie K. Bowman*          
Stephanie K. Bowman
United States Magistrate Judge

UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  OHIO
WESTERN  DIVISION

DELOREAN LUCAS,                                    Case No. 1:12-cv-138
     Petitioner

    vs                                              Dlott, J.
                                                   Bowman, M.J.

HAMILTON COUNTY
MUNICIPAL COURT,
     Respondent


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc